THE STATE v. WATERS, *Appellant*.

Division Two, May 31, 1898.

1. **Habitual Criminal**: LOWEST PUNISHMENT. Where the defendant has been indicted for robbery under the habitual criminal section, and his punishment fixed at the lowest penalty provided for robbery, it does not matter whether or not error was committed in admitting the record of his former conviction for grand larceny, the verdict itself clearly establishing the conclusion that it was not prejudicial.

2. **New Trial**: AFFIDAVIT OF ANOTHER CONVICT. The court in this case did not err in refusing a new trial on the ground of newly discovered evidence, such evidence being the affidavit of a convict who had been a prisoner for robbery, in which he stated he had committed the crime with which the defendant was charged, when by further detailing his acts on the same night he describes another robbery and arouses the suspicion that both robberies may have been committed.

*Appeal from St. Louis City Circuit Court.* — HON. WILLIAM ZACHRITZ, Judge.

AFFIRMED.

*C. O. Bishop* for appellant.

(1) The motion for new trial should have been sustained on the ground of the newly discovered evidence. It is not a question whether the trial judge

himself believed the affidavit; his views of the matter
are impertinent; the true question is: is the evidence
of such a character as might influence a fair and dis-
passionate jury, triers of the fact, to lean to the rea-
sonable doubt in favor of the accused to which he is
entitled. If so, the new trial should be granted.
(2) The court erred in admitting the evidence regard-
ing a former conviction of the accused. There was no
evidence that the defendant had been formerly con-
victed as charged in the indictment. It is difficult to
say just what error is prejudicial, and while it may be
argued that the verdict of the jury indicates that they
did not consider the evidence of former conviction in
assessing the punishment, it can not be said that this
incompetent testimony did not turn the scales against
the appellant on the question of his guilt of the present
charge.

*Edward C. Crow*, Attorney-General, *Sam B.
Jeffries*, Assistant Attorney-General, and *W. W.
Graves* for the State.

(1)   The indictment charges that the former con-
viction of defendant was on the sixteenth day of
November, 1891.  The evidence introduced shows it
to have been on December 16, 1891.  The variance is
an immaterial one, not prejudicial to the rights of the
defendant, as the trial court evidently held, and the
defendant can not complain of it here.  *State v. Sharp*,
106 Mo. 106; *State v. Ballard*, 104 Mo. 634; *State v.
Sharp*, 71 Mo. 281.  (2) The defendant can not com-
plain of the introduction of the evidence for the further
reason that no harm has resulted to him therefrom.
The court specifically instructed the jury as to the pur-
pose for which this evidence could be considered, to
wit, solely for the purpose of increasing the punish-

ment. The charge was robbery in the first degree and the conviction was for robbery in the first degree, but the punishment fixed was only five years, the minimum punishment for such an offense. So the jury evidently excluded this evidence in making their verdict, and the rights of the defendant in this case have not been prejudiced in fact. (3) *First.* The claim of newly discovered evidence was urged as a ground for a new trial. Courts are reluctant to grant new trials upon this ground. *State v. Sansome,* 116 Mo. 1. *Second.* The defendant had a number of witnesses upon the question of *alibi.* The alleged newly discovered evidence is only cumulative upon this question. *State v. Potter,* 108 Mo. 424; *State v. Keith,* 53 Mo. 383; *State v. Meyers,* 115 Mo. 394. *Third.* The affidavit of the witness, McDermott, in this case, shows that his evidence would not change the result. The assault described by him and the assault and robbery described by the State's evidence are not shown to be identical.

GANTT, P. J. —The defendant, on a charge of robbery of one Moore, was convicted in the circuit court of the city of St. Louis. The indictment is as follows:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly empaneled, sworn and charged, upon their oath present that John Waters, on the sixteenth day of November in the year of our Lord one thousand eight hundred and ninety-one, at the city of St. Louis aforesaid, in the St. Louis Criminal Court, was duly convicted on his own confession of the offense of grand larceny, and in accordance with said conviction was duly sentenced by said court to an imprisonment in the penitentiary of the State of Missouri for the term of two years, and was duly imprisoned in said

State penitentiary in accordance with said sentence, and that said John Waters was duly discharged from said State penitentiary after and upon lawful compliance with said sentence; and that the said John Waters, after his said discharge from said State penitentiary, to wit, on the seventh day of February in the year of our Lord one thousand eight hundred and ninety-seven, at the city of St. Louis aforesaid, with force and arms in and upon one Henry Moore, unlawfully and feloniously did make an assault; and the said Henry Moore, in fear of an immediate injury to his person then and feloniously did put, and by force and violence to his person, three dollars and twenty-five cents of the lawful money of the United States, of the value of three dollars and twenty-five cents, all of the money and personal property of the said Henry Moore from the person and against the will of the said Henry Moore, then and there with force and violence, as aforesaid, feloniously and violently did rob, steal, take and carry away contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The testimony on behalf of the prosecution tended to show the following facts: At about 11:30 o'clock P. M. on Sunday, February 7, 1897, one Henry Moore, a negro coachman, was walking southward across the Twelfth street railroad bridge, on his way home from the theatre, when he was suddenly accosted by two men, who presented revolvers, ordered him to throw up his hands, and took from his person $3.25 and started to run away. Another man named Anderson, was also crossing the bridge southward near the same spot, and he was accosted by a man with a revolver, who ordered him to throw up his hands, went through his pockets but found nothing. Just then an electric street car came up and the

assaulting parties retreated and disappeared in the darkness. The appellant was arrested by an officer on the following evening about 9:30 o'clock, near his residence. Upon the trial Moore and Anderson testified that appellant was the man who had presented a revolver at them, made them throw up their hands and "went through" their pockets. Moore stated that appellant at the time wore a cap on his head and had a big overcoat on with the collar turned up. Anderson stated that appellant wore a light spring overcoat—not of a light color—with the collar turned up "around his face," and had a cap on. The motorman of the electric car testified: "I think I saw the defendant that night; he is the man; he crossed right in front of the car from west to east; we were going slow and had the headlight on; saw defendant's face; he had a cap on and his overcoat collar turned up." On cross-examination he stated: "Only saw him that night and only saw his face as he passed across the bridge in front of the car by the light of the headlight; I suppose that was about two seconds."

The appellant was indicted under the habitual criminal section, it being averred that he had on November 16, 1891, been convicted of grand larceny in the St. Louis Criminal Court, upon his own confession, and had been sentenced and committed to the penitentiary. To prove this allegation the State introduced a record of the conviction of December 16, 1891, which was admitted over appellant's objection and exception; and further undertook to identify appellant as the same party by a police officer, who testified on direct examination that appellant "is the same person who pleaded guilty to that charge," and on cross-examination, "I was not in court at the time, did not see or hear the defendant plead guilty to anything."

On the part of appellant, nine witnesses testified that on the night of February 7, 1897, a wake was held over the remains of one Patrick Campbell, at the residence of deceased, and that appellant and other young men and women were present there; that appellant came to the house about 8 o'clock in the evening and remained there until about 5 o'clock the next morning; was there continuously; that appellant was dressed in his "best clothes;" was clean shaven, and wore a stiff felt hat with a very narrow brim, which excited some humorous comments from some of the company; that about 11:30 P. M. refreshments were handed around to the company and appellant was there and partook of the refreshments; that it was about five blocks from this house to the bridge where the alleged robbery occurred; and that during a part of the time appellant was lying down upon a bench in the room where the company was, apparently asleep. When arrested, however, defendant stated to the officer that he went to the wake about 1:30 A. M. of that night.

In due time appellant filed his motion for new trial and in support thereof filed the affidavit of one James McDermott, who had been a prisoner in the St. Louis jail, on a charge of robbery, to the effect that he (McDermott) was the person who had committed the offense with which appellant was charged, and that he had never disclosed the fact to appellant or appellant's attorney until after appellant was convicted; that on the occasion of the robbery he wore a plush cap (which he still wore when arrested and put in jail) and a brown overcoat with the collar turned up; that he was just the same height as appellant, though stouter in build and rounded in the face. In addition to this affidavit appellant filed his own to the effect that he had no knowledge or information prior to the trial, but only after his conviction of the matter stated in McDer-

mott's affidavit, and that no amount of diligence could have ascertained the facts so locked up in the breast of said McDermott.

To reverse the sentence defendant by his counsel insists upon only two propositions: *First*, that upon the newly discovered evidence of the convict McDermott he was entitled to a new trial; *second*, that the court erred in admitting the record of the former conviction of defendant for grand larceny. Of these in their inverse order. While it is true that error is presumably prejudicial and the burden is on the State to show that it was not, we think the verdict itself conclusively establishes that the jury did not find that the defendant was the person who pleaded guilty and was sentenced for grand larceny on December 16, 1891, from the fact that if they had, they would have been bound to affix his punishment at imprisonment *for life*, robbery in the first degree being punishable not less than five years, and may extend to imprisonment for life. Sections 3959, 3533. And hence no harm could have resulted to defendant from the attempt to show the previous conviction as he received the lowest punishment for a first offense. But the variance merely in the date of the judgment, being in the same court and at the same term, did not amount to substantial error, and the circuit court must have so found by admitting the record. *State v. Sharp*, 106 Mo. 106; *State v. Sharp*, 71 Mo. 218.

II.   Did the circuit court err in refusing to grant a new trial because a convict in the penitentiary gives an affidavit tending to show that he was the robber and not the defendant. Inspection of the affidavit itself amply justifies the trial court in declining to grant a new trial based upon its statements. Outside of the utter improbability of any sensible jury crediting the evidence of this self-confessed thief, robber and con-

vict, he does not confess that he robbed Moore. *State v. Taylor*, 136 Mo. 66. He simply admits that he assaulted a negro man with a pistol and that the man's name was unknown to him. Moreover he proves too much. All the credible testimony in this case shows that Moore was robbed without any violence to his person and without inflicting any injury upon his assailant, but McDermott deposes to an altercation in which his cap was cut and rendered bloody. He says John Waters, the defendant, whom he knows now as Fatty Waters, an ex-convict, was not present at his attempt to rob a negro. All this may be true but it does not follow at all that the defendant at or near the same time may not have been robbing his man quietly as the evidence shows he was. It is not impossible nor improbable that both McDermott and the defendant were engaged in relieving law abiding citizens of their money on that same night, and near the same bridge and about the same time.

The circuit court unquestionably exercised a wise discretion in not granting a new trial upon such a showing. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.