## THE STATE v. THOMAS FINN, Appellant.

### Division Two, December 4, 1906.

1. **ROBBERY: Evidence: Revolver.** Evidence adduced by the State in reference to a revolver taken from the night watchman the night he was robbed, was competent.

2. ——: ——: **No Objection.** Where no objection was made to evidence at the time it was offered, a subsequent motion to strike it out should be overruled.

3. ——: ——: **Presence of Defendant.** Evidence that defendant was in the town where the crime was committed, the night of the robbery and before it was committed, is competent, as against defendant.

4. ——: **Newly-Discovered Evidence: Crime Committed by Another.** The motion for a new trial on the ground of newly-discovered evidence was supported by the affidavits of two co-defendants who swore that they with others committed the robbery and knew every person present and connected with it,

that defendant was in no way connected with it, and that they did not tell defendant that they were willing to testify to such facts before the verdict was rendered against him, but they avoided stating who the other robbers were, and did not state that they would testify to the identity of the other robbers. The defendant's affidavit showed that the other two affiants had been convicted of the same robbery but did not state that he made any effort to ascertain from them a knowledge of the facts to which they made affidavit. *Held*, it being within the discretion of the trial court to refuse a new trial on the ground of newly-discovered evidence where such evidence would not probably change the result upon a retrial, and it being contrary to human experience to expect a jury to believe the testimony of these two self-confessed criminals, it cannot be said that the trial court exercised an unsound discretion in refusing to grant defendant a new trial.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

AFFIRMED.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) The court did not err in overruling defendant's motion to strike out all of the evidence adduced by the State, regarding a certain revolver used and introduced in evidence. The information charged defendant with the crime of robbery and with robbing William Conner of and stealing from him a certain revolver, the property of said William Conner, and the evidence moved to be stricken out was offered for the purpose of identifying and proving the value of the property described in the information and was clearly competent for that purpose. Besides, no objection was made by the defendant when the evidence was offered, and it is well settled that "a party cannot speculate upon the effect of evidence which is objectionable upon its face when offered, as this clearly was, if ever, and then complain of a refusal to reject it later in the trial." State v. Marcks, 140 Mo. 668; State v. Rapp, 142 Mo. 449;

State v. Hope, 100 Mo. 347; Maxwell v. Railroad, 85 Mo. 95.  (2)  The court did not err in permitting the State to prove that defendant was seen in the city of Aurora the night of the robbery and before the crime was committed.  1.  "The presence of the defendant at the necessary time and place must be shown as essential to the commission of a crime," and the burden is on the State.  State v. Woolward, 111 Mo. 256; State v. McGinnis, 158 Mo. 123; State v. Harvey, 131 Mo. 346; State v. Taylor, 134 Mo. 152.  2.  No objection was made to this evidence when the witness was examined in chief, nor did defendant move to strike the same out. Authorities under point 1.  (3)  Error was not committed in overruling defendant's objection to the evidence of the prosecuting witness as to the time when, and place where, he found the defendant Thomas Finn and his co-defendants.  The objection to this evidence was that it was "incompetent and immaterial for any purpose."  The officer made the arrest of these parties in the discharge of his official duty.  He saw the defendant by the aid of the flashlight, and this evidence was clearly competent to prove the defendant's presence at the place of the crime.  The fact that such evidence tended to prove the commission of another crime is not a valid objection.  Underhill on Crim. Ev., sec. 90. (4)  The court did not err in refusing a new trial on the ground of newly-discovered evidence.  1.  No showing was made in the motion for a new trial or in the affidavits in support thereof that the newly-discovered evidence was so material that it would probably produce a different result if the new trial were granted.  State v. Myers, 115 Mo. 398. To grant a new trial upon the ground of newly-discovered evidence, supported by the affidavits of two self-confessed criminals, so closely associated with the defendant, on trial, and under circumstances tending to discredit the truth of the statements therein, would be against the rule laid down in the adjudged cases.  For

it is evident that if the witnesses did testify that the defendant was not there when the crime was committed and that they knew who the others were, such evidence would not probably change the result in another trial, and therefore a new trial for that reason was properly refused. State v. Myers, 115 Mo. 394; State v. Welsor, 117 Mo. 570; State v. Miller, 144 Mo. 26; State v. Allen, 171 Mo. 562; State v. Ray, 53 Mo. 345; State v. Reynolds, 171 Mo. 552.  2.  The affiants were co-defendants of the defendant, and the affidavits fail to show that the defendant sought to obtain from the affiants the facts relied upon or that affiants refused to testify thereto. Therefore, the motion and affidavits failed to show that the defendant used due diligence.  Kelley's Crim. Law & Prac., sec. 424; State v. Morgan, 96 Mo. App. 343; State v. Sansone, 116 Mo. 1; Cook v. Railroad, 56 Mo. 380; Graham & Waterman on New Trial, 1021.  3.  The granting of a new trial on the ground of newly-discovered evidence rests in the sound discretion of the court, and, if any doubt exists as to whether that discretion has been soundly exercised, such doubt should be resolved in favor of the ruling of the trial court.  State v. Smith, 65 Mo. 313; Stephens v. Macon, 83 Mo. 345; State v. Morgan, 96 Mo. App. 343; Kelley's Crim. Law & Prac., 424.

GANTT, J.—On the third day of January, 1905, the prosecuting attorney of Lawrence county filed an information, duly verified, wherein he charged the defendant, together with Fred Herron, Arthur Herron and Otis Herron, with robbery in the first degree in Lawrence county on the —— day of December, 1904.

The defendant was arrested and arraigned and entered his plea of not guilty and was granted a severance.  At the March term, 1905, he was tried and convicted, and his punishment assessed at a term of nine years in the pententiary. His motions for new trial and in arrest were duly filed and overruled and an appeal

granted to this court. The defendant is not represented in this court by counsel, but we have examined the record.

The evidence discloses that in December, 1904, William Conner was employed by the city of Aurora in Lawrence county, as a night watchman. On the morning of December 14, 1904, between two and three o'clock, Conner heard a noise in a buggy-shed back of a store known as "The Mercantile," and upon investigation and by the aid of a flash light he discovered the defendant and two others hiding in the shed, and told them to come out and directed them to come with him, whereupon they said they were looking for a restaurant, but he notified them that he was going to take them to jail, and he took the defendant and the two others, to-wit, Fred and Otis Herron, to the City Hall. By his direction they lighted a lamp. Conner then commanded them to drop what they had upon the floor, and one of them complied. Conner testified that by the aid of the lamp as well as the flash light, he saw the defendant's face and had no hesitancy in identifying him as one of the three prisoners that he arrested that night. Just as Otis Herron was dropping what he had on the floor, a fourth man came into the City Hall by the side of the night-watch and drew a gun on him. Conner immediately turned his attention to the new comer and knocked him down, but at this point all three of his prisoners, the two Herrons and the defendant Finn, assaulted Conner, each having a gun, and beat him into insensibility; they robbed him of his watch, his revolver and sixty cents in money, and left him on the floor unconscious, in which state he remained until five o'clock that morning. There was also evidence tending to prove that the defendant Finn and his co-defendants were seen in a saloon in Aurora between eleven and twelve o'clock that night. The defendant was a witness in his own behalf and testified that he was not in Aurora on the night of the 13th or the morning of the 14th of

December, 1904, but was in Pierce City and registered
at the Brunkswick Hotel about 11:30 p. m. under the
name of Bert Daniels, an assumed name; that Arthur
Herron, one of his co-defendants, was with him and
registered at the same time under the name of Arthur
Woods, and a traveling salesman registered at the same
time. The hotel keeper was a witness for the defendant
and testified that on the night of the 13th of December,
1904, about 11:30 o'clock p. m., a traveling salesman reg-
istered at his hotel and about the same time two others
registered under the name of Bert Daniels and Arthur
Woods; that the two who registered as Bert Daniels and
Arthur Woods, paid him a dollar and were assigned
rooms; that he showed the salesman his room and re-
turned to the office, but the two men had disappeared
and he did not see them thereafter, and did not know
whether they remained at his hotel over night or not.
He did not recognize the defendant as one of the men
who registered that night. He testified further that
Pierce City is about eighteen miles west of Aurora and
there were trains going east all hours of the night. The
court instructed on the essentials of robbery in the
first degree, and in another instruction told the jury that
although the defendant did not actually assault and
strike the prosecuting witness Conner, or actually take
and carry away any money or property of said Conner
as described in the information, yet if the jury believe
from the evidence that either Arthur Herron, Fred Her-
ron or Otis Herron assaulted Conner, and by force and
violence to his person took from him or from his person
and against his will, the money and property described
in the information, or any part thereof, with the intent
to convert the same to his or their own use, and that
defendant was present aiding, assisting, abetting or
encouraging, or was present for the purpose and with
the intent to aid, assist, abet or encourage, if necessary,
the said Arthur Herron, Fred Herron, Otis Herron or
any other person actually making such an assault and

in the taking of said property, then the defendant is equally guilty with the person actually making such assault and robbing the said Conner. The court instructed fully upon the credibility of the witnesses, and competency of the defendant as a witness in his own case, the presumption of innocence, reasonable doubt, and at the request of the defendant gave an instruction that if the jury had a reasonable doubt that the defendant was present at the time when and the place where the said robbery was committed then they would return a verdict of not guilty as to this defendant.

I. The defendant moved the court to strike out all the evidence adduced by the State regarding the revolver that was taken from the officer that night and introduced in evidence, but this objection was clearly without merit, and besides no objection was made by the defendant when the evidence was offered. The motion to strike out was properly overruled. [State v. Marcks, 140 Mo. l. c. 668, 669.] And the same ruling must be made as to the objection urged in the motion for new trial to the testimony to the effect that the defendant was in the city of Aurora the night of the robbery, and before the crime was committed. On the plainest principles it was competent to show that the defendant was present at the time and place of the commission of the offense.

II. One of the grounds assigned for new trial was newly-discovered evidence. This ground was supported by the affidavits of Otis and Fred Herron, who swore that on the night of December 13, 1904, and the morning of December 14, 1904, they with others committed the robbery which is charged against the defendant and they knew every person present at the said assault and robbery, and who was connected with it, and that defendant Finn was not present and was in no way connected with it; that they did not tell the defendant that they were willing to testify to such facts before the

verdict was rendered against him. It will thus be observed that the motion for new trial as to the newly-discovered evidence was supported by the affidavits of two self-confessed robbers. While they made affidavits that they knew every person who was present when the robbery was committed, they avoided stating who the others were, and do not state that they would testify as to the identity of the others on trial. These affiants were codefendants with the defendant and the affidavit of the defendant shows that Otis and Fred Herron were both convicted of the same robbery and nowhere states that he made any effort to ascertain from them a knowledge of the facts to which they made affidavits. The granting of a new trial on the ground of newly-discovered evidence rests largely in the sound discretion of the court, and it has often been said that the refusal to grant a new trial on the ground of newly-discovered evidence, where such evidence would not probably change the result upon another trial, is not error. To grant a new trial based upon the evidence of Otis and Fred Herron, both of whom were convicted at the same term and sentenced to the penitentiary, one upon a plea of guilty and the other upon trial, would clearly contravene the rule just announced. It would be contrary to human experience to expect the jury to take the evidence of these two confessed criminals as outweighing the testimony of the officer who arrested them and the defendant, and who had ample opportunity to observe and identify the defendant as one of the robbers. [State v. Myers, 115 Mo. 394; State v. Miller, 144 Mo. 26; State v. Allen, 171 Mo. 562; State v. Reynolds, 171 Mo. 552.] It cannot be said that the circuit court exercised an unsound discretion in refusing to grant a new trial on this ground. [State v. Smith, 65 Mo. 313.]

III. The circuit court did not err in declining to adjourn the trial in order to permit the defendant to procure evidence to show that the passenger train left

Pierce City at 10:16 p. m. on the night of the robbery. There was evidence on behalf of the defendant that the train going east was due at Pierce City at that time, and there was no evidence that it was late that night. The evidence of the hotel man, moreover, disclosed that freight trains went east at all hours of the night.

There are other grounds for new trial assigned in the motion, but they are without merit and afford no ground for the reversal of the judgment. We discover no error whatever, either in the record proper, or in the action of the circuit court on the trial, and the judgment must be and is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.