**STATE of Missouri, Respondent,**

v.

**James L. McWILLIAMS, Appellant.**

No. 49409.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Motion for Rehearing and Transfer to Court En Banc Denied Sept. 9, 1963.

James L. McWilliams, pro se.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Grace S. Day, Sp. Asst. Atty. Gen., St. Joseph, for respondent.

BARRETT, Commissioner.

A jury found James Lloyd McWilliams guilty of the offense of "stealing." § 560.-156 RSMo 1959, V.A.M.S. The charge and proof was the theft of a "motor vehicle" and therefore the offense was a felony regardless of the value of the automobile. § 560.161, subd. 2(2) RSMo 1959, V.A.M.S. Five prior felony convictions were found by the court and McWilliams was sentenced to 10 years' imprisonment. § 556.280 RSMo 1959, V.A.M.S. With the assent and encouragement of his trial counsel the appellant has himself prepared and filed the brief in this court.

The sufficiency of the evidence to sustain the conviction is not challenged and

only a brief résumé of the evidence favorable to the state is necessary. There were 75 automobiles on the Gene Jantzen Chevrolet lot when the used car manager closed for the week on February 18, 1961. When he came to work on Monday, February 20, a 1960 four-door, solid white Chevrolet, serial number 01519S245348, was missing and the fact was reported to the police. The automobile was not seen again until five months later when the police arrested the defendant and the automobile was identified at police headquarters. The police were looking for Dudley Bullock's stolen license plate X37–881. On July 14, 1961, they "spotted" a white Chevrolet bearing that license plate parked near a restaurant where McWilliams' wife was employed, and when he entered the automobile and drove away the police arrested him. The following day he "admitted" to the police and to the used car manager that "he went to the 5200 block of Ashland and stole a license plate and came up to Gene Jantzen's lot and got a car," the missing Chevrolet which he said he drove away as "the key was in the car." This evidence and these circumstances, including his possession of the stolen vehicle, support the charge and the jury's verdict. State v. Jones, (Mo.) 358 S.W.2d 782; State v. Gale, (Mo.) 322 S.W.2d 852.

■ Three of the matters briefed were not referred to in the motion for a new trial (Sup.Ct.Rule 27.20, V.A.M.R.) and in so far as they are matters of exception are not open questions here. State v. Brown, (Mo.) 298 S.W.2d 351, 353. In so far as they are "matters upon the record" (Sup.Ct.Rule 28.02), and concern the sufficiency of the verdict, sentence and judgment, they may be disposed of summarily.

■ The fourth assertion and assignment that the court, immediately upon the return of the verdict, assessed the penalty and raised the bond from two to ten thousand dollars "before appellant's attorney was allowed to place before the trial court a motion for a new trial" does not comport with the record and evidently is an assumption based upon a misinterpretation of the facts. The verdict was returned January 25, 1962, whereupon the court polled the jury and explained the reason for the form of the verdict. "Thereafter, and on March 5, 1962," the record recites, the defendant filed his motion for a new trial. Subsequently, March 9, 1962, the defendant and his counsel were present in court, together with the state's attorney, and the motion for new trial "was argued, submitted, considered and denied." And again thereafter, in accordance with the verdict and the court's finding of prior convictions, there was formal "Judgment, Allocution and Sentence." Thus, according to the solemn record, the defendant was present in court, there was argument of his motion for a new trial, and there was sentence and judgment in accordance with the rules. Sup.Ct.Rules 27.08, 27.09, 27.10.

■ The sixth objection is that the court erred in using the forms of verdict in that they "did not specify the charge as shown and given on the information under which the appellant was charged which reads as follows '5 Prior Convictions of a Felony and Stealing over Fifty Dollars ($50.00) or Over (Motor Vehicle)?'" As a matter of fact, as indicated at the outset, there was no such charge and there was no such submission in the verdict forms. The one returned by the jury "find(s) the defendant guilty of stealing a motor vehicle, as charged." And, as indicated, the theft of a motor vehicle is a felony regardless of its value. § 560.161, subd. 2(2) RSMo 1959, V.A.M.S. His five prior felony convictions were alleged and shown but they were not alleged or shown as independent "charges" or as a part of the substantive offense of stealing. With some degree of justifiable pride the appellant points to his successful appeal of a bogus check conviction in 1960, State v. McWilliams, (Mo.) 331 S.W.2d 610. But there, before the effective date of the new and amended Habitual Criminal Act (Laws Mo.1959, S.B. 117), the appellant complained because his prior convictions were proved and submitted as a part of

the state's case in chief. Now, despite the change and the new procedure of the judge finding the prior convictions, he complains that they were not included and found in this verdict. But as to this complaint, as well as to any complaints of the substantive offense of "stealing," the appellant simply refuses to accept the new concepts of both procedure and substantive law. State v. Zammar, (Mo.) 305 S.W.2d 441; State v. McWilliams, supra.

▪ Somewhat related to these two claims, but more likely a matter of exception, is the fifth complaint that "under the ruse of impeachment" the state's attorney was permitted "to completely place before the jury the entire past criminal record * * * that are not officially recorded against the appellant." It may be noted in passing that both parties, as the trial court attempted to tactfully suggest on several occasions, pursued every possible subject in tedious detail. But it was the appellant who insisted upon going into the details of three of the bogus check cases—"Can we go into details on this, sir? I would like to." He was particularly insistent in repeatedly explaining that one with a criminal record had difficulty in financing the purchase of automobiles. But, as the trial court observed in considering an objection, "Well, the man has an explanatory manner about him." But having insisted on certain details he is in no position to complain of a similarly detailed cross-examination.

▪ In his motion for a new trial there was specific objection to instruction 1, that it was "inconsistent" and "likely to mislead the Jury." To elaborate and demonstrate, in his motion and here, the appellant excerpts from this long instruction (over two printed pages) and complains that the definition of "stealing" is too broad, "far beyond the evidence and the facts in this case." He says that no one saw him take the automobile and he argues that under this instruction "anyone could be tried for stealing so long as said party had possession or control of any automobile or article. If said party having possession could not produce ownership papers for the same." It is not necessary to comment in detail on this latter statement, it is sufficient to again say that the argument is a further illustration of the appellant's understandable unwillingness to accept and face the new concept and definition of "stealing." State v. Zammar, supra; State v. Jones, supra. Once the new definitions are accepted it may only be said that instruction 1 is not prejudicially erroneous for the reasons urged here. State v. Price (Mo.), 362 S.W.2d 608; State v. McCarthy (Mo.), 336 S.W.2d 411.

▪ The third ground assigned for a new trial was newly discovered evidence. It is not necessary to detail all the circumstances connected with this claim, *as to form* the affidavits of the appellant and Billy Eugene Lackey are accepted as sufficient although it does not appear just who Billy is, where he has been all this time, just how he was found after this conviction, and how he happened to make the affidavit attached to the motion. McWilliams reaffirms that he did not steal the automobile, claims, as in the trial, that he bought it from a stranger named *Martin*, that he was never able to find Martin even after eight or ten encounters with him, and that prior to February 22, 1962, he did not know Lackey and could not have produced him as a witness in January. The essence of Lackey's affidavit is that *"sometime in the early part of 1961, I don't remember the exact date,"* I went to the Gene Jantzen used car lot * * * and took from the used car lot there *a white 1960 Chevrolet*; that I was alone when I took this 1960, white Chevrolet; that James Lloyd McWilliams was not with me nor was I, *on that date,* acquainted with James Lloyd McWilliams; and James Lloyd McWilliams did not have anything to do in any way with the stealing of this 1960, white Chevrolet." Lackey also affirms, had he testified, that he would have said "that a few blocks away from Gene Jantzen Chevrolet used car lot *I stole a license plate from a parked automobile* and put it on the 1960 Chevrolet

I had just taken." He states that he had this automobile for four or five days and "sold it to a fellow who called himself *Tom Moss*" for $150 and, he deposes, "I never saw him or the car again." (Italics supplied for emphasis.)

It would indeed be an unusual coincidence that these two separate sets of circumstances could have happened, but that probably goes only to the credibility of Lackey and his affidavit. It is not necessary, however, to analyze these affidavits and the record in detail, it is enough to say that Lackey's affidavit could be accepted and yet it is sufficiently vague and uncertain that McWilliams, unknown to Lackey, between February 18th and 20th could have stolen license plate X37–881 and a 1960 white Chevrolet, serial number 01519S245348. In brief but sufficient illustration, as the court said of a similar affidavit 75 years ago, "Did the circuit court err in refusing to grant a new trial because a convict in the penitentiary gives an affidavit tending to show that he was the robber, and not the defendant? Inspection of the affidavit itself amply justifies the trial court in declining to grant a new trial based upon its statements. Outside of the utter improbability of any sensible jury crediting the evidence of this self-confessed thief, robber, and convict, *he does not confess that he robbed Moore. * * * He simply admits he assaulted a negro man with a pistol, and that the man's name was unknown to him.* * * * All this may be true, but it does not follow at all that the defendant, at or near the same time, may not have been robbing his man quietly, as the evidence shows he was. It is not impossible nor improbable that both McDermott and the defendant were engaged in relieving law-abiding citizens of their money on that same night, and near the same bridge, and about the same time. The circuit court unquestionably exercised a wise discretion in not granting a new trial upon such a showing." State v. Waters, 144 Mo. 341, 347–348, 46 S.W. 173, 175. And see State v. Rippey, 228 Mo. 342, 350–351, 128 S.W. 726, 729.

■ The other ground set forth in the motion is that the court erred in "refusing to inform a member of the Jury Panel as to the punishment for the crime." The appellant now attempts to expand this wholly inadequate assignment (Sup.Ct.Rule 27.20; 24 C.J.S. Criminal Law § 1673(4) p. 1109) into a claim that the court erred in "withholding the range of punishment from any member or prospective member of the jury panel." This claim has to do with the fact that on voir dire a juror repeatedly inquired of the court "What is the extreme penalty?" When he insisted on an answer and his right to know the court finally said, "I will excuse you on the Court's own motion." The court withheld the information because of the allegation of the prior felony convictions because of which the court said, "You won't have anything to do with that, Mr. Juror, at all. Only thing you will decide is did he do it or not do it. The range of punishment, I have to determine as a Court." Aside from the inadequacy of the assignment, there is no claim here that the juror chosen, in the place of the excused juror, was not duly summoned and qualified, the appellant was not entitled as a matter of right to have a particular person on the panel and, in short again, there was no manifest abuse of discretion in the court's excusing the persistently inquisitive juror. State v. Naylor, 328 Mo. 335, 40 S.W.2d 1079; 24A C.J.S. Criminal Law § 1867, p. 717.

As indicated in other connections, there is no error "upon the record" before the court (Sup.Ct.Rule 28.02), there is no merit in the appellant's assignments of error and, therefore, the judgment is affirmed.

BOHLING, C., concurs.

STOCKARD, C., concurs in result.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.