**STATE of Missouri, Respondent,**

v.

**Larry James MARSHALL, Appellant.**

**No. 39072.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Sept. 5, 1978.

Motion for Rehearing and/or Transfer
Denied Oct. 13, 1978.

Application to Transfer Denied
Nov. 6, 1978.

Robert W. Meyers, Shaw, Howlett & Schwartz, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Jeff W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Larry James Marshall was charged by indictment in three counts with sodomy, rape, and robbery in the first degree. He was found guilty by a jury of each offense and he has appealed. We affirm.

We shall relate only such facts as are essential to an understanding of the issues.

Bathilda Lewis lived alone in an apartment at 4355 Maryland in the City of St. Louis. In the early morning hours of April 25, 1976, when she was expecting a girl friend to come by her apartment, the door buzzer sounded and she spoke with a person on the intercom whom she thought was her girl friend. She then operated the electric device which unlocked the front door to the building, and she unlocked and opened the door to her apartment. A few minutes later a black male entered her apartment, threw a jacket over her head, and committed the offenses with which appellant was charged. During the struggle between them, the assailant pulled the robe Miss Lewis was wearing up over her head and dropped his jacket to the floor. Apparently in an effort to persuade her assailant to leave Miss Lewis told him that the door to her apartment was unlocked, that she was expecting a visitor, and that when the visitor arrived she would enter. The assailant then pushed Miss Lewis through a door into a bedroom and, according to Miss Lewis, said "he was going out to check the door to see if it actually locked." He opened the apartment door and went into the hallway and the door automatically locked behind him. He apparently realized that he had left his jacket in the apartment and he pounded on the door in an unsuccessful attempt to regain entrance. In the pocket of the jacket there was a bottle of pills which had been prescribed for appellant. The police lifted fingerprints in the apartment, and a police officer, testifying as an expert, stated that a fingerprint found on a doorknob in the apartment was made by appellant's right index finger.

Defendant interposed the defense of alibi and he testified that on the night of April 24, 1976, he attended a dance in Wellston, and after visiting some friends until 3:30 o'clock the next morning he went to another party where he stayed until 4:30 or 4:45 o'clock. He then went to his automobile and discovered that his Levi jacket and a pair of shoes were missing, and he went immediately to the Seventh District Police Station to report the theft.

During the voir dire examination of the jury panel the prosecutor made the following statement:

"Some of the evidence in this case will be what is called circumstantial evidence. I can't get into specifically what the evidence in the case is at this time, but some of it will be circumstantial and some of it will be direct. And the distinctions will

be explained to you. For example, a fingerprint would be circumstantial evidence. Some kind of physical test or laboratory test would be circumstantial evidence. Direct evidence would be the testimony of someone who readily observes something. Now, a lot of our case will be circumstantial evidence. Do all of you understand that circumstantial evidence is just as strong legally as direct evidence; that a conviction can be had on circumstantial evidence solely; it can be had on direct evidence solely or on a combination of both?"

Only inferentially was an objection made to this statement, but appellant asked that the jury be told that "they must find beyond a reasonable doubt and they must consider all reasonable hypotheses * *." A discussion followed between court and counsel in which the court commented that it did not "exactly know what the Defendant's position [was] * * *." The court concluded that "to clear up any possible confusion" it would read the first part of MAI 3.42, and it then informed the jury as follows:

"Ladies and gentlemen of the jury, with regard to circumstantial evidence, it is the proof of facts or circumstances that give rise to a reasonable inference of other facts that tend to show the guilt or innocence of the Defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict."

Appellant asserts in his first point that the court "did not adequately explain to the jury and correct the impressions of the jury panel as to the nature of circumstantial evidence [resulting from] the circuit attorney's phrase that circumstantial evidence is just as strong as direct evidence," and the reading of only "the first paragraph of * * the MAI on circumstantial evidence did not adequately correct this impression upon the minds of the jurors during voir dire."

We mention here that this problem arose as the result of the assistant circuit attorney improperly undertaking to advise the jury, under the guise of voir dire

examination, as to what the law is, a practice previously criticized by this court. See *State v. Van*, 543 S.W.2d 827 (Mo.App.1976). However, appellant's request that the court read to the jury MAI–CR 3.42 on circumstantial evidence during the voir dire examination of the jury was improper. The voir dire examination is not the time to instruct the jury on the law applicable to the case. There was an appropriate objection that could have been made to the improper comments, and in response to such an objection appropriate relief could have been provided by the court. We note that at the proper time for requests for instructions to be made, appellant did not request an instruction on circumstantial evidence and none was given. In view of the unusual circumstances of this occurrence, the action taken by the trial court was probably the best solution; it certainly was not an abuse of discretion and did not result in any prejudice to appellant.

During the voir dire examination it was developed that one of the jurors was acquainted with appellant and that another had gone to school with and knew the assistant circuit attorney who was trying the case. The court commented as follows:

"Gentlemen, the Court does not see any reason in a community as large as the City of St. Louis why any juror should know either one of the attorneys or the parties to the lawsuit. The case law in Missouri has been that the juror is not a determiner of his own qualifications; rather, the Court is the final determiner of any qualifications of the juror. Therefore, to avoid any possibility of prejudice or even the appearance of any possibility of prejudice or impartiality, the Court, on its own motion is going to order stricken for cause both of these jurors; namely, Juror No. 516, Karen Walker, who does know the Defendant, and Juror No. 351, Barry McEney, who went to school with Mr. Ravetta [the assistant circuit attorney]."

Appellant interposed no objection to this action of the court. He stated only that he "would have found them both to have been

qualified," and that "it's within the sound discretion of the Court, but [he] believe[d] that they both would have been qualified panelists."

A specific objection which calls the attention of the trial court to the ground or reason for the objection is required to preserve an issue for appellate review. *State v. Paglino,* 319 S.W.2d 613 (Mo.1958); *State v. Lang,* 515 S.W.2d 507 (Mo.1974). Not only was there no objection, appellant correctly conceded that it was a discretionary matter for the court. However, aside from the failure to preserve the issue, the trial court has the authority to strike prospective jurors on its own motion, *State v. McWilliams,* 370 S.W.2d 336 (Mo.1963), and it is not limited to the strict terms of the applicable statutes when ruling on the competence of prospective jurors. *State v. Williams,* 538 S.W.2d 947 (Mo.App. 1976). Appellant makes no claim that any member of the jury before which he was tried was not qualified, and he was not entitled as a matter of right to have a particular person on the jury panel. *State v. McWilliams,* supra. We find no manifest injustice or abuse of discretion on the part of the court.

Police Officer Charles Bergmann testified as an expert witness concerning the comparison of appellant's fingerprint and the print found on the doorknob of the apartment. During the cross-examination appellant asked him about his testimony before the Grand Jury, and after stating that the printed report of his testimony before the Grand Jury showed that he had stated that there were nine points of comparison, Officer Bergmann added, "which I feel still—." At this point appellant interrupted and asked that the court "direct the witness only to respond to questions." The court stated: "Well, certainly he's only responding to the question you are asking him, I'm sure. I'll direct him * * * Officer Bergmann, you may answer any question that is asked and you may give any explanation that you desire in answer to the question. But you are to answer the specific question." There then followed a confer-

ence out of the hearing of the jury in which there was an academic discussion of whether the witness was entitled to explain an answer made on cross-examination, or if there was to be an explanation it had to be brought out on redirect. In the discussion the court commented: "I don't think he has violated any rule as a witness. * * * but I have instructed him to answer the question * * *." The court further commented: " * * * under certain circumstances, I will let a witness explain an answer. And the last answer could be a qualified answer or * * * a qualified no answer, and the witness certainly has a right to explain away any such answers." Appellant then objected "to the ruling that you made," and when the court asked, "what ruling?" He answered, "that he could explain his answers in front of the jury."

The effect of the court's ruling was that it would "under certain circumstances" permit a witness to explain an answer. We do not know what those circumstances were and we cannot say that the court erred in so ruling. As a general rule, when a question calls for an answer of either "yes" or "no," then the court may in its discretion permit the witness to explain the answer. 81 Am.Jur.2d Witness § 434; *State v. Johnson,* 301 So.2d 609 (La.1974); *United States v. Nichels,* 502 F.2d 1173 (7th Cir. 1974). In any event we are not called upon to decide whether the ruling of the court was correct. We find no contention by appellant that a witness improperly attempted to explain an answer. Neither does he contend that the court improperly refused to strike out any part of an improper answer.

In his fourth point appellant challenges six instructions because in each "the time cited for the event to have occurred was between 4:20 A.M. and 4:50 A.M. and * * all the facts adduced at trial indicated that the event only could have occurred between 4:30 A.M. and 4:55 A.M."

We have experienced some difficulty in ascertaining the precise basis of appellant's contention of error. Although he

does not specifically so state, he apparently contends that the instructions in some way tended to disparage his defense of alibi. If by that he means that the time of the offenses as hypothesized in the instructions was in conflict with his evidence in support of his alibi, that is of no consequence. The jury was entitled to not believe part or all of such evidence.

██ Appellant argues that the instructions "all set forth an erroneous statement of the time of the offense." We do not agree. Miss Lewis estimated her buzzer sounded at 4:30 o'clock A.M. She said, "I'm guessing the time." Therefore, it could have been a few minutes earlier or later. She also stated that she estimated her assailant was in her apartment between fifteen and twenty minutes, and that the police arrived about 5:00 or 5:05 o'clock which she estimated to be ten to fifteen minutes after she called them. These statements of time are of necessity only approximate. Therefore, the hypothesis that the offenses occurred between 4:20 and 4:50 o'clock of the morning of April 25, 1976, was clearly supported by the evidence.

We shall consider appellant's last two points together. In point V he asserts error in overruling his motion "for judgment of acquittal at the close of the State's evidence," and in point VI he makes the same assertion as to his motion "at the close of all the evidence."

██ Appellant offered evidence on his behalf and thereby waived any claim of error as to his motion for acquittal at the close of the State's case. *State v. Hall,* 438 S.W.2d 244, 247 (Mo.1969). As to his motion at the close of all the evidence, he argues that the State has the burden to show the accused's presence at the time and place of the offense of which he is charged, and that the State is not relieved of that burden by reason of the defense of alibi. We agree with that statement. See *State v. Martin,* 515 S.W.2d 802 (Mo.App.1974). He then asserts that his "alibi accounts for every minute of his time, except for a roughly five minute drive * * *," and he refers to what he calls a "far-fetched" in-

ference which he describes as follows: that he "a youth and a high school dropout, after committing several violent acts on the victim in this matter, had the presence of mind to realize that his jacket and pill bottle were left in the victim's apartment and that he could escape detection if he immediately reported them as stolen in another police district and [that he walked] into that station house in a normal manner just thirteen minutes after he * * * committed three violent crimes." He then concludes: "Weighing that proposition against the possibility that the fingerprint was faked [of which there is absolutely no evidence] yields the answer that * * * [appellant] could think and react so fast as to coolly report the theft of items from his car a mere thirteen minutes after he had committed three violent crimes [which left him] in a frenzy that * * * his words [were] almost incomprehensible to his victim * *." The basic deficiency with this contention is that it is an argument as to the weight to be given the evidence, but the weight of the evidence and the inferences to be drawn therefrom were for the jury, and the jury resolved those issues against appellant. We find no prejudicial error.

The judgment is affirmed.

DOWD, P. J., and SNYDER, J., concur.