**STATE of Missouri,
Plaintiff-Respondent,**

v.

**George Clifton GILMORE,
Defendant-Appellant.**

**No. 64024.**

Supreme Court of Missouri,
En Banc.

Nov. 22, 1983.

Rehearing Denied Dec. 20, 1983.

A. David Arand, Larry G. Mittendorf, P.E. Morgan, Jr., Union, for defendant-appellant.

John Ashcroft, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals his capital murder conviction and death sentence. The statutory aggravating circumstances, supported by the evidence and serving as the basis for the death penalty, were killing for the purpose of receiving money or any other thing of monetary value, § 565.012.2(4), RSMo Supp.1982; *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983) (1983); and killing for the purpose of preventing testimony in a judicial proceeding, § 565.012.2(12), RSMo Supp.1982; *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983).

Issues raised on appeal are alleged error in: 1) allowing evidence of the victim's emotional state prior to death; 2) allowing evidence of other crimes; 3) improperly excusing a prospective juror from duty; 4) playing of defendant's videotape confession of other murders during the sentencing phase; and 5) excessive punishment.

*Pro se,* defendant alleges the following plain errors: 1) failing to appoint counsel within time to allow raising of defense of mental disease or defect; 2) requiring his appearance in court in leg irons; 3) failing to prove culpable mental state to support capital murder.

No error appears and the conviction and sentence are affirmed.

Defendant was obsessed with the notion that older people living in rural areas had no trust in banks but left substantial sums of money in their homes. It was that perverse vagary that led to the death of 83 year old Mary Luetta Watters of Robertsville, Missouri, and defendant's conviction for her murder.

The macabre episode begins in early August, 1979. Defendant, who lived in Dallas, Texas, with his wife and children, placed a long distance telephone call to his brother, Norman Gilmore, who was residing in Rindge, New Hampshire, asking him to join him in work in Dallas. Norman and a friend, Kirk Sebastian, left shortly thereaft-er for the trek to Texas and after arriving there commenced working with the defendant in some sort of used car towing, repair and resale business. Norman and Sebastian had not been in Texas for more than a few days when defendant revealed his "easy money" scheme for robbing old people. After some persuasion, Norman and Sebastian agreed to participate in the defendant's malminded venture and the three proceeded to rural areas of Franklin and Jefferson counties to scout around. After some time, with trips back to Texas, the ultimate decision was made to put defendant's plan into effect.

On their second trip to Missouri, they spotted the home of Mary Luella Watters who lived by herself in the isolated backwoods area of Robertsville in Franklin County. Those circumstances suited defendant's plans to a "T", and his plan was put in operation.

Defendant first acquired a .32 caliber revolver from a pawn shop in Dallas.[1] Next, defendant, Norman and Sebastian traveled to Missouri a third time. After some stops for refreshment in Franklin and St. Louis counties, the three went to Mrs. Watters' home. Under the pretext of making an offer to purchase her auto, they surveyed her place. They then went into the woods for some target practice with their gun and finalized defendant's plans for the crime with defendant noting that they had "an easy job." It was in the early morning of August 24, 1979 that the three men, intent on crime, parked their pickup truck on a road in the woods and walked to Mrs. Watters' home. An encounter with a skunk which wanted to follow them caused them a brief and unexpected interlude.

Upon arriving at Mrs. Watters' house, according to plan, Sebastian cut the outside telephone wire, then all three threw rocks through the windows and banged on the door. Mrs. Watters' response was to fire her shotgun at her assailants, narrowly missing defendant's head. Gaining entry into their victim's house by kicking in the

---

**1.** A .32 caliber gun was particularly selected, because of a pragmatic suggestion by defend-ant's wife—they had some spare .32 caliber ammunition at home.

door, the three men found Mrs. Watters sitting on her bed. They demanded her money, but she had none. The invaders then completely ransacked the house and found a police scanner as the only item of value. When Sebastian inadvertently called out defendant's name,[2] defendant stated: "Well, you know what I have to do, now." Defendant's preconceived plan called for the killing of witnesses if the names of any of the three men were spoken or if they were identified in some way.

With that, defendant stepped over to Mrs. Watters as she lay on her bed of death and shot her in the chest. When the poor lady said, "Ooh, what did you do that for?", defendant shot her in the chest again. Cause of Mrs. Watters' death was the two .32 caliber gunshot wounds to her chest which pierced her heart.

Gathering their malgained booty which consisted of the scanner, which ultimately brought $20, and Mrs. Watters' shotgun, which also netted them $20 in gasoline for their vehicle, the three men left for Texas. On the way, defendant constantly mocked Mrs. Watters' last words of anguish and remarked that: "Well, we don't have to worry about witnesses, now." On return to his Texas home, defendant related the incident to his wife and how he had killed Mrs. Watters when his name had been called out.

Police were baffled by the crime and had no clues as to the identity of the perpetrators of Mrs. Watters' killing. But defendant, seemingly deriving an almost sensual joy from telling of the crime, repeated it to a host of relatives at a family reunion.

At trial, Norman Gilmore testified for the state in exchange for a 30 year sentence for his participation in the crime. In addition to brother Norman, three relatives related the incident of the killing as told to them by defendant, and another substantiated defendant's scheme to make easy money. The testimony of all these witnesses was remarkably consistent that defendant planned the robbery and killed Mrs. Watters to erase her as a potential witness. The state's case was extremely thorough even to

the extent of presenting the Dallas pawnbroker who sold defendant the .32 caliber revolver.

Defendant's defense was kind of a mixed bag: that he had never been to Mrs. Watters' house; that he did not kill her; and that everyone who testified against him was lying. Inconsistent with the foregoing defense of not being at the crime scene, is his substantial reliance on his deprived childhood, lack of education and his borderline mental retardation range as being excuses for his participation in the crime. The two defenses are obviously not congruent.

We now address the issues raised on appeal.

First, defendant urges that the trial court erred in failing to declare a mistrial after the prosecutor asked the victim's daughter-in-law certain questions pertaining to the victim's family life and her mental and physical fitness. At least, so argues the defendant, the jury should have been instructed to disregard the context of the questions.

During trial, Mrs. Watters' daughter-in-law was asked about the number of grandchildren the victim had, how the victim occupied herself and her physical and mental condition. Objection to each of the four questions was sustained. Defendant now contends plain error by the trial court's *sua sponte* failure to grant a mistrial or instruct the jury to disregard the purport of the irrelevant questions.

■ There is no error. Aside from being granted all the relief requested, *see State v. Williams*, 652 S.W.2d at 110–11, defendant cannot point to any prejudice by reason of the trial court's failure to grant the drastic remedy of mistrial. After all, in a situation of this kind, the trial court possesses the proper coign of vantage to assess any improper prejudicial effect of such questioning. *State v. Lee*, 654 S.W.2d 876, 879 (Mo. banc 1983). And the trial court's responses to defendant's objections were

2. Apparently Sebastian called out: "What do   we do, now, George?"

prompt. There was no abuse here of the trial court's discretion in ruling on the objections or in failing to declare a mistrial. *State v. Williams,* 652 S.W.2d at 11. Rulings on matters of relevancy and prejudice, which is the point of this issue, rest within trial court's discretion. *State v. Berry,* 609 S.W.2d 948, 954 (Mo. banc 1980).

▮ Blood or family ties did nothing to restrict defendant's relatives from testifying about his killing Mrs. Watters. Robert Gilmore, a first cousin, testified that defendant had told of the weird scheme of getting money from old people who did not believe in banks and that he utilized his junk and used car business only as a front to go to "old people's houses" and to "check out houses". Defendant insists that the reference to "houses" also contains a reference to other crimes.[3]

Of course, reference to other crimes is tethered to rigid rules. *State v. Williams,* 652 S.W.2d at 110. But it would take the wildest stretch of imagination for a jury to believe on the basis of defendant's cousin's statements that the defendant had tried or been involved in similar killings such as occurred with Mrs. Watters. But if that mind wave should reach the jury, in this instance it would be no more than permissible evidence of a common scheme or plan. *State v. Trimble,* 638 S.W.2d 726, 732 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983).

Prior to trial, the presiding judge of the judicial circuit took it upon himself to excuse one of the individuals who was scheduled to be on the jury panel. The prospective juror, a sometime police officer, had indicated that he had wanted to bring a gun into the trial. Defendant now contends that he was unfairly deprived of his right to have a qualified juror available by the action of the presiding judge in excusing the potential venireman without notice.

▮ This excuse of the potential juror may not fit precisely within any of the categories of § 494.031, RSMo 1978 pertaining to persons entitled to be excused. But it is readily apparent that substantial discretion is afforded the circuit court regarding the judge's ruling on excusing a prospective juror. *See State v. Marshall,* 571 S.W.2d 768, 772 (Mo.App.1978), particularly as to § 494.031(9), which allows the trial court to exercise its own judgment in excusing a person by reason of hardship. And *see State v. Smith,* 655 S.W.2d 745, 747 (Mo.App.1983), commenting on the trial court's wide discretion in determining the qualifications of a prospective juror. Obviously, the statute is directory and not mandatory, and absent a showing by defendant of prejudice that his interests were adversely affected by failure to strictly observe the statutory provisions for excuse, there is no prejudice to him by the circuit judge's action. *State v. Holt,* 592 S.W.2d 759, 767 (Mo. banc 1980). We perceive absolutely no abuse of discretion by the trial court in this instance in excusing the prospective juror prior to trial. Defendant has not shown any prejudice to him by that action. There was no systematic exclusion of classes of persons such as condemned by *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Nor was there any bias exhibited or a denial of a fair cross-section of the community. *State v. Alexander,* 620 S.W.2d 380, 385 (Mo. banc 1981). No error appears on this issue.

During the penalty consideration phase of this bifurcated proceeding for the jury's consideration, the state played a videotaped confession by defendant from another case in which he admitted a dual killing of an elderly couple, Clarence and Lottie Williams.[4]

Applying his "easy money" scheme, in the videotape defendant confesses to killing the Williams couple in much the same manner as he killed Mrs. Watters.

Notice was given to defendant that that evidence of the Williams' murders would be

---

**3.** Defendant was charged with and convicted of killings in similar type situations. *State v. Gilmore,* 650 S.W.2d 627 (Mo. banc 1983).

**4.** *See State v. Molasky,* 655 S.W.2d 663, 668 (Mo.App.1983) pertaining to procedures for admitting videotapes into evidence.

submitted to the jury as a nonstatutory aggravating circumstance. But under plain error, defendant contends that it was evidence of other crimes not authorized to be introduced and that its sole purpose was to fan the flames of prejudice against him.

But it was entirely appropriate under the state of the law for the jury to have before it during the penalty phase "as much information . . . as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. 153, 204, 96 S.Ct. 2909, 2939, 49 L.Ed.2d 859 (1976). To the same effect is *Lockett v. Ohio,* 438 U.S. 586, 602–03, 98 S.Ct. 2954, 2963–64, 57 L.Ed.2d 973 (1978).

In this instance, defendant's conviction for the Williams' murders was not final and formal sentencing not imposed. But the jury was not told of the convictions and was shown only the videotaped confession. The information given to it was clearly relevant under *Gregg* and the holding of this Court in *State v. Shaw,* 636 S.W.2d 667, 675 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982), which commands that the jury be given full information pertaining to the defendant, including his propensity for criminal activity, in giving consideration to imposition of the death sentence.

■ Defendant's argument that evidence of other crimes should not be used to convict him of the crime with which he is charged obviously does not pertain to the sentencing phase procedures in capital cases. Evidence of other convictions and crimes is appropriate for jury consideration in the second segment of the bifurcated proceedings. *State v. LaRette,* 648 S.W.2d 96, 102 (Mo. banc 1983); *State v. Blair,* 638 S.W.2d 739, 756–57 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). The admission of the videotape on relevancy ground was not an abuse of trial court discretion. *State v. Williams,* 652 S.W.2d at 113.

For himself, defendant contends that he was denied his statutory right to assert the § 552.030, RSMo Supp.1982 defense of mental disease or defect. He alleges that when he was arraigned on August 11, 1981, the trial judge told him that an attorney would be appointed but that, in fact, counsel was not provided until 15 days later. However, it was not until March 4, 1982 that an effort was made to assert the Chapter 552 defense, especially with respect to defendant's ability to assist in his defense. The state objected to the raising of the defense as being far beyond the 10 day limitation provided for in § 552.030.2. Nevertheless, the state presented the testimony and written reports of three psychiatrists. Each of the three psychiatrists concluded that the defendant understood the nature of the charges against him and was able to assist his counsel in defense and was not suffering mental disease or defect within the meaning of §§ 552.010, RSMo 1978, and 552.030.-1.

The trial court also submitted to the jury the issue of defendant's capacity to appreciate the criminality of his conduct or whether his ability to conform to the requirements of the law was substantially impaired—an issue decided unfavorably to defendant. So the defendant has no legitimate complaint coming on the presentation and handling of the Chapter 552 defense.

■ Section 552.030.2 is specific in requiring a defendant to assert the Chapter 552 defense within ten days of a not guilty plea or show good cause for change of plea from not guilty to reliance on mental disease or defect. The trial court gave defendant's counsel opportunity to go through the entire arraignment proceedings after defendant had first been arraigned. Nothing was done for nearly seven months in raising mental disease or defect defense. Under the circumstances, with the evidence of defendant's mental condition before it, the trial court did not abuse its discretion in disallowing formal assertion of such defense. There was no good cause established to allow the change. *State v. Haley,* 603 S.W.2d 512 (Mo.1980); *State v. Collier,* 624 S.W.2d 30 (Mo.App.1981). The fact that counsel was not appointed until 15 days after defendant's not guilty plea at arraignment is not pertinent here.

Defendant's next *pro se* point concerns his being required to sit with leg irons attached during trial.

The trial court made note that defendant had been convicted previously of capital murder and had other capital charges pending against him. The trial court considered "that some security is required." For that purpose, defendant sat with leg irons attached during trial and without objection. It is also evident that his legs were under the counsel table concealed from view from the jury and that at no time was he moved in the courtroom with restraints for jurors to observe.

■ A defendant is, of course, entitled to appear before the jury unfettered unless for good cause. But in this instance the trial court was only exercising proper discretion to maintain courtroom security under the circumstances. *State v. Bolder,* 635 S.W.2d 673, 687 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). And the record is destitute of an indication that any juror saw the restraints in place. *State v. Beal,* 470 S.W.2d 509, 516 (Mo.1971); *State v. Richards,* 467 S.W.2d 33, 38 (Mo.1971). No error appears in this regard.

Again, *pro se,* defendant urges that the state failed to prove the culpable mental state requisite to a capital murder charge.

■ A repeat of the evidence is unnecessary. It is sufficient to state that the evidence clearly establishes that defendant planned the "easy money" scheme to rob the victim, he intentionally shot her twice to kill her to prevent her from being a witness against his crime and that the killing was part of the deliberate plan. Although, as stated in *State v. Turner,* 623 S.W.2d 4, 7 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982), "the state need not produce direct evidence of a defendant's premeditation and deliberation; instead, the mental elements establishing murder may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying." But, in this in-stance, all the requisite elements to establish capital murder were presented and proved by direct evidence.

Finally, defendant contends the punishment is excessive. In reviewing this point, we consider the elements of § 565.014.3, RSMo 1978.

■ First, the record suggests nothing that the sentence "was imposed under the influence of passion, prejudice or any other arbitrary factor." *State v. Stokes,* 638 S.W.2d 715, 724 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983).

■ Second, the evidence overwhelmingly supports the jury's finding of the statutory aggravating circumstances of § 565.-012.2(4) and (12) that defendant murdered for "himself or another, for the purpose of receiving money or any other thing of monetary value," *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *State v. Stokes,* 638 S.W.2d at 724, and "for the purpose of preventing the person killed from testifying in any judicial proceeding," *State v. Williams,* 652 S.W.2d at 113.

■ Third, the sentence is not excessive or disproportionate, considering the crime and defendant, in comparison to *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983) and *State v. Stokes,* 638 S.W.2d at 724 (death penalty invoked for murder for things of monetary value) and to *State v. Williams,* 652 S.W.2d 102 (Mo. banc 1983) and *State v. Blair,* 638 S.W.2d 739 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983) (murder to prevent a witness from testifying in a judicial proceeding).

The judgment is affirmed.

All concur.

Execution date set for January 6, 1984.