George C. GILMORE,
Movant-Appellant,

v.

STATE of Missouri,
Defendant-Respondent.

No. 50566.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 6, 1986.

Motion for Rehearing and/or Transfer
Denied June 10, 1986.

Application to Transfer Denied
July 15, 1986.

Frank A. Rubin, Asst. Public Defender, Jefferson City, for movant-appellant.

Timothy Melenbrink, Pros. Atty., George Cox, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

REINHARD, Judge.

Movant appeals from a denial of his Rule 27.26 motion after an evidentiary hearing. We affirm.

Movant was convicted of capital murder after a jury trial and sentenced to death. His conviction was affirmed by the Missouri Supreme Court in *State v. Gilmore,* 661 S.W.2d 519 (Mo. banc 1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). The facts are laid out in detail in that opinion. Movant subsequently filed a Rule 27.26 motion on June 5, 1984, and counsel was appointed. In October, 1984, counsel filed an amended motion and movant filed a pro se amended motion. The motions were consolidated on February 5, 1985. Among the claims for relief contained in those motions, movant asserted ineffective assistance of counsel and improper jury selection. An evidentiary hearing was held on March 7, 1985, and following extensive findings of fact and conclusions of law, the court denied relief.

On appeal, movant raises two points. Movant contends that the hearing court erred in concluding that movant was not denied effective assistance of counsel at trial and in concluding that movant was not denied his constitutional right to a jury composed of a fair cross-section of the community.

With respect to his first point, movant alleges that counsel was ineffective because counsel had been informed of the existence of certain witnesses who would provide an alibi for movant, yet did not contact or interview those witnesses. Included among the list of names and addresses of witnesses who would place movant in the Dallas, Texas area on or about August 24, 1979, the date of the alleged offense, is: "... Charles Morgan ... of Dallas, Texas." Movant contends that the trial court's finding that movant's alibi allegation did not state a basis for relief was erroneous because deponent Charles Morgan's deposition testimony contains statements placing movant in Texas on the date of the alleged murder, and Mr. Morgan was willing to testify at movant's trial.

The attorneys for movant were Larry G. Mittendorf and Philip Edward Morgan, Jr. Mittendorf was senior counsel and Morgan was an associate in his office and an active participant in the case. Both testified at movant's 27.26 hearing on March 7, 1985, as to the numerous conversations they had with movant prior to trial. The attorneys represented movant from shortly after arraignment until denial of the motion for rehearing in the Supreme Court of Missouri.

Mittendorf testified that alibi had been discussed as a possible defense. Philip

Morgan testified that George Gilmore stated he was not present in the State of Missouri at the time of the murder, and that Gilmore gave him names of persons in Texas, including Charles Morgan, that supposedly would substantiate his claim. Philip Morgan, no relation to Charles Morgan, further testified that he made at least four phone calls to Charles Morgan. Philip Morgan stated that when he talked with Charles Morgan on March 5, 1982, Charles Morgan only stated that he had lent Gilmore some money. At that time, Charles Morgan could not give any particular information regarding Gilmore's whereabouts in August of 1979. Philip Morgan testified that he arranged to talk with Charles Morgan again, and did in fact talk with him on March 8 and on March 16. Philip Morgan stated that following the phone calls, Charles Morgan was going to attempt to locate a checkbook record regarding the funds that he had paid to George Gilmore. Again, he could not identify Gilmore's whereabouts on August 24, 1979. Charles Morgan was unable to find any record of the funds paid to Gilmore.

In addition to the phone calls placed to Charles Morgan, the attorneys testified that they held discussions with most of the witnesses that were going to be called. They discussed an alibi defense at length with movant, including the conversations they had had with Texas witnesses. Mittendorf testified that at that point, as a result of extensive discussion, he and Philip Morgan determined that the alibi witnesses "would do us more harm than good, and that nobody was going to do us any good as far as alibi." With respect to the use of Charles Morgan as a possible alibi witness, Mittendorf testified that based on the contacts made by Philip Morgan with Charles Morgan by telephone, and the indecisive and inconclusive nature of his information, their decision was that he would be of no assistance in establishing an alibi.

Following the testimony of attorneys Mittendorf and Morgan, the court continued the evidentiary hearing to allow movant's counsel to go to Texas and depose witnesses, including Charles Morgan. The pertinent part of Mr. Morgan's deposition is as follows:

Q. Okay. In the process of the trial of that case in '81 and '82, were you ever contacted by either the police department or attorneys concerning these matters?

A. Someone came down here and came to my bar and talked to me.

Q. Do you recall who that was?

A. Seems like it was two detectives or something.

Q. It was somebody from the police department?

A. Yes.

Q. Did an attorney or investigator indicating that they represented Mr. Gilmore ever speak with you?

A. Somebody called me on the phone but nobody ever came by.

Q. Was that a Mr. Phillip Morgan?

A. I can't recall.

Q. Do you remember—

A. I remember—

Q.—approximately when this call was?

A. It seems like it was in '82. I don't really remember about all of that.

Q. I want to go back to August the 19th, '79. You said you knew George at that time and that he was here in Dallas; is that correct?

A. Yes.

Q. Do you remember how long he was in Dallas that month?

A. He was here quite a while because I had some money for him and he had already been—it seems to me to Missouri and back and located a business and that's what he was saving his money to buy.

Q. When you say he had gone to Missouri and back, was that in August or before August?

A. It was before August.

Q. Do you remember him leaving for the State of Missouri in August of 1979?

A. I can't state exactly when it was. It seemed like it was August, sometime in 1979. I believe it was August.

Q. Was it near Labor Day in '79 that he left for Missouri?

A. I think it was after Labor Day because we had a party Labor Day and I think I remember him being at that Labor Day party.

The standard of review for ineffective assistance of counsel claims was established by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which states that the court must look at whether the attorney performed his duties in a professionally competent manner, and if not, whether that derelection of duty prejudiced defendant at trial. *Id.,* 104 S.Ct. at 2066–2067. The court stated that these standards require no special amplification in order to define counsel's duty to investigate. *Id.,* at 2066. The court concluded that strategic choices made by an attorney after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.*

The record of the trial and evidence of Mittendorf and Philip Morgan reveal an excellent preparation and trial in this case. Morgan's testimony revealed detailed memos as to the phone calls and interviews he conducted in this case. He also had a transcript made of a conversation he had with movant prior to trial regarding the use of Charles Morgan as a possible witness.

■ The attorneys testified that their failure to call Charles Morgan as a witness was a deliberate decision that was an element of their trial strategy. On what we see here, it was a reasonable choice. It would take an extremely liberal interpretation of Morgan's deposition testimony to find that he testified that movant was in Dallas, Texas, on August 24, 1979. First he said movant went back to Missouri before August; then he stated he believed it was in August; and finally, it was after Labor Day because movant was at his party on Labor Day. At trial, movant testified that he returned to Missouri on September 2 and was at a family party in Missouri on Labor Day. Thus, Morgan's testimony

was inconsistant, and contradicted movant's. We conclude, as did movant's trial counsel, that Charles Morgan would have been little or no help to movant as a witness at trial. The trial court's determination that movant received effective assistance of counsel was not clearly erroneous.

■ Movant's second point on appeal is as follows:

The trial court clearly erred in finding that movant's death qualification claim did not state a basis for relief because the per se rule articulated by the Eighth Circuit Court of Appeals to the effect that a capital murder jury, with venire persons excluded for cause because they hold absolute scruples against the death penalty is conviction prone, thereby violating a sixth and fourteenth amendment guarantee for criminal defendants, applies to movant's case in that venire person [sic] holding absolute scruples against the death penalty were so excluded at movant's trial, as shown by evidence presented by movant at his 27.26 hearing.

The Missouri Supreme Court has repeatedly held that the state may constitutionally exclude jurors who cannot consider death as a possible punishment because the state has a legitimate interest in administering its death penalty statute. *State v. Bannister,* 680 S.W.2d 141, 146 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985); *State v. Johns,* 679 S.W.2d 253, 265 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *State v. Byrd,* 676 S.W.2d 494, 499 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *State v. Preston,* 673 S.W.2d 1, 8–9 (Mo. banc 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). Therefore, the trial court did not err in overruling movant's claim that his jury was conviction-prone.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.