George C. GILMORE, Petitioner,

v.

Bill ARMONTROUT, Respondent.

No. 86–4583–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

Feb. 26, 1988.

Kevin L. Collins, Shook, Hardy & Bacon, Kansas City, Mo., for petitioner.

Stephen Hawke, Missouri Atty. Gen.'s Office, Jefferson City, Mo., for respondent.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Pending for decision in this Court is petitioner George C. Gilmore's application for habeas corpus under 28 U.S.C. § 2254. Petitioner is in the custody of the Missouri State Penitentiary, pursuant to a conviction of capital murder on May 6, 1982 in the Osage County Circuit Court. The petitioner was subsequently sentenced to death.

Petitioner appealed directly to the Missouri Supreme Court, which affirmed the conviction. *See State v. Gilmore*, 661 S.W. 2d 519 (Mo.1983) (en banc). Following this adverse decision, petitioner filed a 27.26 motion which was denied and affirmed by the Missouri Court of Appeals, Eastern District. *See Gilmore v. State*, 712 S.W.2d 438 (Mo.Ct.App.1986). Petitioner advances the following nine claims in his petition for writ of habeas corpus: (1) petitioner was not represented by counsel at his arraignment and plea, in violation of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution; (2) petitioner was forced to wear leg irons in the presence of the jury throughout his trial; (3) petitioner was denied effective assistance of counsel at his trial; (4) petitioner was denied a trial by a jury chosen from a cross-section of the population; (5) the prosecutor's closing argument was improper; (6) the jury was allowed to consider evidence of other crimes in reaching its decision to impose the death penalty; (7) the death sentence constitutes cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the United States Constitution; (8) the death sentence is excessive under the circumstances of this case; and (9) the jury was allowed to consider improper evidence in reaching both its decisions to convict and to

impose the death penalty.[1] For the reasons set forth below concerning effective assistance of counsel and the prosecutor's closing argument, the petition for writ of habeas corpus will be granted and Petitioner shall receive a new trial in the penalty phase of the proceedings or, in the alternative, be relieved of his unconstitutional sentence of death.

### Facts

The morbid facts of this case are lucidly detailed in the Missouri Supreme Court's opinion, *State v. Gilmore*, 661 S.W.2d at 521–22, and are abbreviated here. The evidence established that the petitioner was consumed with the idea that elderly people living in rural areas left substantial sums of money in their homes, rather than depositing it in banks. This idea led to the early morning murder of Mary Luetta Watters of Robertsville, Missouri on August 24, 1979. When the petitioner and his two cohorts arrived at Mrs. Watters' home, they cut the outside telephone wire, threw rocks in the windows, and banged on the door, eventually kicking it in. The three men, finding Mrs. Watters sitting on her bed, asked her for money, but she had none. While in the process of ransacking Mrs. Watters' home, one of the men referred to the petitioner by name, calling, "What do we do now, George?" This use of petitioner's name invoked a preconceived plan to kill the witness/victim if any of the three men were identified in any way. Therefore, pursuant to this plan, petitioner shot Mrs. Watters twice in the heart. The three men then left for Texas in possession of Mrs. Watters' police scanner which was pawned for $20 and her shotgun which was traded for $20 worth of gasoline. Following petitioner's return to Texas, the evidence indicated that petitioner mocked Mrs. Watters' last words and bragged about her killing to his relatives.

### Discussion

#### I. Petitioner was not represented by counsel at arraignment

Before dealing with the specific grounds on which petitioner's writ of habeas corpus

is based, it is necessary to consider the issue of exhaustion. Under 28 U.S.C. § 2254(b), the petitioner has an obligation to exhaust state remedies before seeking relief in federal court. In the present case, respondent argues that the petitioner has failed to present to the state courts his argument that he was denied representation by counsel at his arraignment.

The United States Supreme Court has outlined the purpose of the exhaustion doctrine as "afford[ing] the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986) *citing Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982). In the Eighth Circuit, the exhaustion requirement has been interpreted to mean that a petitioner must have the chance to fairly present to the state courts the "substance" of his federal habeas corpus claims. *Little v. Armontrout*, 819 F.2d 1425, 1428 (8th Cir. 1987) *citing Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 512–13, 30 L.Ed. 2d 438 (1971).

It is the opinion of this Court that petitioner's *pro se* brief and argument filed in the Missouri Supreme Court, appealing the trial court's judgment of the capital murder conviction and death sentence, sufficiently provided state court review. In fact, the Missouri Supreme Court opinion, *State v. Gilmore*, 661 S.W.2d at 524, touches the fact that petitioner was not appointed counsel until 15 days after his not guilty plea at the arraignment. This is a fair presentation of the substance of the federal habeas corpus claim, thus fulfilling the Eighth Circuit standard set out in *Little v. Armontrout, supra*. This Court remains unpersuaded by the respondent's argument that this claim is procedurally barred. Therefore, this analysis will con-

---

1. For purposes of this Order, the issues of effective assistance of counsel and the impropriety of the prosecutor's closing argument shall be considered together.

tinue, assuming federal court review is proper.

The petitioner argues that his conviction was unconstitutional under the Sixth and Fourteenth Amendments to the United States Constitution because he was not represented by counsel at the time of his arraignment and plea. The petitioner cites two cases, both easily distinguished, in support of this proposition.

First of all, petitioner cites *State v. Scott*, 404 S.W.2d 699, 702 (Mo.1966), in which the Missouri Supreme Court found that arraignment is a "critical stage" in a criminal proceeding, requiring appointment of counsel. Petitioner is correct in stating that the Missouri Supreme Court had previously so held. This argument is fatally flawed, however, in light of subsequent rulings. For example, one year after *Scott*, the Missouri Supreme Court held that "[T]he rule requiring counsel upon arraignment is not inflexible; it is not required where, as here, no later prejudice could possibly result from the absence of counsel. The absence of counsel during arraignment is not, per se, a violation of the Sixth Amendment." *State v. Benison*, 415 S.W.2d 773, 775 (Mo.1967). *See also State v. Donnell*, 430 S.W.2d 297, 300 (Mo. 1968) (absence of counsel during arraignment not a per se Sixth Amendment violation); *McClain v. State*, 448 S.W.2d 599, 602 (Mo.1970) (absent showing of prejudice, absence of counsel is not constitutional error).

The petitioner also cites the case of *Hamilton v. State of Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961), in which the United States Supreme Court held that *under Alabama law* arraignment is a critical stage of criminal procedure. The *Hamilton* case was distinguished by the Eighth Circuit Court of Appeals in *McClain v. Swenson*, 435 F.2d 327, 330 (8th Cir.1970). The Eighth Circuit noted that, in Missouri, if there is no showing of prejudice due to the absence of counsel or a showing that the State gained some advantage, absence of counsel at arraignment is not prejudicial per se. *Id.* at 330–31.

The petitioner in this case is requesting this Court to grant a new trial because he was not represented by counsel during his arraignment. He argues that his inability to assert a Chapter 552 defense (mental disease or defect) resulted in prejudice to him. The Missouri Supreme Court considered this claim on direct appeal and found that the petitioner was not prejudiced by lack of this defense. *State v. Gilmore*, 661 S.W.2d at 524. Further, petitioner was unable to successfully assert this defense in any of his other cases because seven psychiatric evaluations failed to disclose a mental disease or defect. *See State v. Gilmore*, 681 S.W.2d 934, 940 (Mo. 1984) (en banc). Since there is no evidence to support a Chapter 552 defense, petitioner has failed to demonstrate any prejudice due to absence of counsel at the time of his arraignment.

It is the opinion of this Court that there was no constitutional error committed due to petitioner's absence of counsel at arraignment. In the alternative, it is clear that even if there were an error, it was harmless beyond a reasonable doubt. The United States Supreme Court has recognized that constitutional errors are a possibility in criminal proceedings. It has, however, declined to require an automatic reversal of convictions unless the errors or defects affect the substantial rights of the parties. *Chapman v. State of California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The Supreme Court has taken a position which advocates tailoring relief appropriately to fit the circumstances. *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). This position was adopted by the Eighth Circuit in *United States v. Solomon*, 679 F.2d 1246, 1250–51 (8th Cir.1982).

In applying these concepts to the case at bar, it is the opinion of this Court that a new trial would not be warranted by the circumstances surrounding petitioner's absence of counsel. There has been no demonstrable prejudice to the petitioner, therefore, his lack of counsel may be deemed harmless beyond a reasonable doubt. The petitioner's request for a new

hearing on the penalty phase is, therefore, denied on this claim.

## II. *Petitioner was forced to wear leg irons in the presence of the jury*

The petitioner asserts that his Fifth and Fourteenth Amendment rights under the United States Constitution were violated by the fact that he was forced to wear leg irons in the presence of the jury. The case authority cited by the petitioner in support of this notion is unpersuasive to the Court.

In researching the law on this issue, it appears that the initial inquiry turns on what is necessary to retain control of the defendant in each individual case. Each defendant is entitled to a presumption of innocence under the American system of criminal justice. *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 1692, 48 L.Ed. 2d 126 (1976). A court must be alert to factors that could undermine the fairness of the judicial process. *Id.* at 504, 96 S.Ct. at 1693. In moving beyond the presumption of innocence, however, it becomes evident that in some cases, it may be necessary to restrain a defendant in some way. *See, e.g., Illinois v. Allen*, 397 U.S. 337, 344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970).

In Missouri, use of restraints is uncommon. The respondent cites two cases in which restraints were used due to the security threat posed by each defendant in his trial. *See State v. Bolder*, 635 S.W.2d 673, 687–688 (Mo.1982) (en banc), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983); *State v. O'Neal*, 718 S.W.2d 498, 502–503 (Mo.1986) (en banc),

*cert. denied*, — U.S. —, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987).

In the present case, the state court obviously was concerned that petitioner posed a security threat. This was reasonable considering that petitioner had been convicted of capital murder and had other capital murder charges pending against him. In addition, the evidence reflects that none of the jurors saw the restraints in place.[2] The Missouri Supreme Court considered this issue on direct appeal and found no error. *State v. Gilmore*, 661 S.W.2d at 525. The Eighth Circuit has recently held that the jury is aware of the practice of handcuffing prisoners. A prisoner must demonstrate actual prejudice as a result of being required to wear restraints. *Clark v. Wood*, 823 F.2d 1241, 1245 (8th Cir.1987). In a federal habeas corpus proceeding, the petitioner must show that the error complained of affected the outcome of the trial. *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir.1987). There has been no such showing in the instant case. Therefore, the fact that the petitioner wore leg irons in the presence of the jury does not constitute grounds for issuance of the habeas corpus writ.

## III. *Petitioner was denied effective assistance of counsel/The Prosecutor's closing argument was improper*[3]

### A. *The Exhaustion Requirement*

The respondent argues that petitioner has failed to exhaust his claim of the impropriety of the prosecutor's closing argument in state court proceedings. Under 28 U.S.C. § 2254(b), the petitioner has an obli-

---

**2.** The trial court judge ordered that the defendant would not be moved around the court room in leg irons or chains. He wore leg irons at the counsel table; and the court took a recess preceding the defendant's testimony from the witness stand.

**3.** The Court is aware that defense counsel with little experience in criminal law are often appointed to cases such as this. Although the following discussion seems critical of defense counsel, the Court appreciates the efforts required to defend George C. Gilmore. While it is true that defense counsel should have objected to the prosecutor's closing argument, it is also true that this argument should never have been

stated. The prosecutor in this case had an ethical duty to argue within the law and this duty has clearly been breached. The ABA Standards for Criminal Justice, Standards 3–5.8(c) and (d) state:

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law.

gation to exhaust state remedies before seeking relief in federal court. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982). The exhaustion requirements are satisfied if (1) the petitioner has fairly presented his constitutional claim to the state court, or (2) if there are no currently available non-futile state remedies through which the constitutional claim can be presented to the state courts. 28 U.S.C. § 2254(b) and (c). *See Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir.1980).

The underlying purpose of the exhaustion requirement is to give the state courts the opportunity to review federal constitutional issues and to correct errors made by the state trial courts. Therefore, the petitioner must only give the *substance* of his claim to the state courts. In other words, petitioner must include *the same facts and legal theories* in his federal petition that he presented to the state courts. *Laws · v. Armontrout*, 834 F.2d 1401, 1412 (8th Cir. 1987) (emphasis added) *citing Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971).

■ It is clear that the petitioner has exhausted his claim of ineffective assistance of counsel because he presented these arguments in his state post-conviction 27.26 motion. The state court specifically dealt with this issue on appeal in *Gilmore v. State*, 712 S.W.2d 438, 441 (Mo.Ct.App. 1986).

Less clear, however, is application of the exhaustion requirement to the claim of the impropriety of the prosecutor's closing argument. Apparently, the petitioner presented this claim to the Missouri state courts in his 27.26 motion, but failed to include this claim in his appeal from the denial of 27.26 relief. The respondent argues that petitioner's claim is now procedurally barred from habeas corpus review in federal court under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed. 2d 594 (1977).

■ In spite of the fact that petitioner has not met the first requirement set out in *Rose v. Lundy, supra,* it is evident that, as stated in the second prong, there are no currently available non-futile state remedies through which the constitutional claim can be presented to the state courts. Missouri Supreme Court Rule 27.26 governs the procedure used by petitioner in his initial claim to vacate, set aside, or correct his sentence. Petitioner is precluded from filing a second Rule 27.26 motion unless he can establish that he is raising a new ground that could not have been raised by him in the prior motion. Rule 27.26(d). Petitioner's claim of impropriety of the prosecutor's closing argument is not based on new evidence and could have been raised in his prior 27.26 motion. Therefore, pursuant to Rule 27.26(d), petitioner is foreclosed from further state relief regarding the prosecutor's closing argument. *See Lindner v. Wyrick*, 644 F.2d 724 (8th Cir. 1981), *cert. denied,* 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981) (in Missouri, the proceeding on the first post-conviction motion forecloses both those claims that were alleged and those that could have been alleged). Because petitioner no longer has any remedy available to exhaust this claim, the requirement of exhaustion should not be applied inflexibly to bar this Court's consideration of petitioner's claim. *McLallen v. Wyrick*, 494 F.Supp. 138, 143–44 (D.Mo.1980); *Parton v. Wyrick*, 614 F.2d 154, 157 (8th Cir.1980).

Despite respondent's contention, counsel's failure to object to such a blatantly prejudicial argument is so grossly negligent that it falls completely outside the standards of *Wainwright v. Sykes, supra.* The *Wainwright* court, dealing with the issue of absence of objection at the trial court level, held that a habeas petitioner must meet rigorous cause and prejudice standards before being permitted to raise the issue in his federal habeas corpus petition. *Wainwright*, 433 U.S. at 88–89, 97 S.Ct. at 2507.

To hold petitioner George C. Gilmore to the *Wainwright* standard would result in complete disregard for the underlying purposes of the Great Writ of habeas corpus which was designed to bring relief to persons who are illegally deprived of their liberty. The petitioner should not be pun-

ished by death for his trial counsel's gross negligence in his failure to make objections, for his appellate counsel's failure to raise this issue in his appeal from the denial of his 27.26 motion, or for the trial judge's failure to *sua sponte* prohibit the objectionable closing argument or to issue a limiting instruction. Therefore, it is the conclusion of this Court that the exhaustion requirement has been met through the second prong of *Rose v. Lundy, supra,* and the Court shall consider the petitioner's claim that the prosecutor's closing argument was improper.

### B. *Prosecutor's Closing Argument*

The Supreme Court of Missouri has held on numerous occasions that it is prejudicial error for the prosecutor to argue that a sentence imposed by the jury may be diminished by parole or any procedure that is not administered by the judicial branch of government. *See, e.g., State v. Cornett,* 381 S.W.2d 878, 881 (Mo.1964) (en banc).

█ The inherent prejudice of this closing argument lies in the fact that the jury was falsely led to believe that the only way to punish the defendant was through death. " 'It is the duty of the jury if they find the accused guilty to impose such punishment as they consider to be just under the evidence and within the limits stated in the Court's instructions; and that they must not concern themselves with what may happen afterwards.' " *Id., quoting Jones v. Commonwealth,* 194 Va. 273, 72 S.E.2d 693 (1952). In this case, the jury was led to believe that a fifty-year sentence without probation or parole was not guaranteed punishment. Therefore, the prosecutor's closing argument in the Gilmore trial clearly falls within the scope of prohibited argument:

> If you put this man in the penitentiary for a period of fifty years without probation—or without parole, you haven't punished him. He's been to the penitentiary before. In fact, he escaped from it. *And also you have absolutely no guarantee that the legislature down the road, here, won't change its mind, that they won't pass another law saying that you can let someone who's been convicted like this defendant out of jail before the fifty years are up, or the governor could commute his sentence.* That sort of punishment is no deterrent, especially to men like this who know what the penitentiary is, who know what it's like living in there.
> Record II at 765–66, *Gilmore* (No. 64024) (emphasis added).

The record indicates that petitioner's trial attorney made no objection to this highly prejudicial closing argument.

In order to preserve an objection for appeal, the Missouri Supreme Court requires that a contemporaneous objection be made to the offensive matter at trial. A point raised on appeal must be based upon the theory of the objection made at trial. *State v. Byrnes,* 619 S.W.2d 791, 793 (Mo. Ct.App.1981). There is, however, an exception to this general rule which is known as the plain error rule. This rule provides for consideration of error on appeal where there are "... plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Mo.Sup. Ct.R. 30.20.

The Missouri courts advocate using the plain error rule sparingly. *See, e.g., State v. Hubbard,* 659 S.W.2d 551, 555 (Mo.Ct. App.1983). There is no formula for invoking the plain error rule. It is an elusive concept which must be dealt with on a case by case basis, balancing the facts and circumstances in each individual situation. *State v. Miller,* 604 S.W.2d 702, 706 (Mo.Ct. App.1980).

In this case, the prosecutor made a blatantly prejudicial closing argument to which defense counsel failed to object. Petitioner received a death sentence. It is clear that petitioner's "substantial right" to life has been affected under Rule 30.20. It is the opinion of this Court that a death sentence delivered following a prejudicial closing argument is manifestly unjust. Therefore, using the plain error rule, this Court finds that the prosecutor's closing argument is so blatantly prejudicial that petitioner must receive either a new trial in

the penalty phase of the proceedings or, in the alternative, be relieved of his unconstitutional sentence of death.

## C.  *Ineffective assistance of counsel*

In order to be successful in a claim of ineffective assistance of counsel, a petitioner must show: (1) deficient performance by counsel; and (2) that the deficient performance prejudiced the defense and deprived petitioner of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

It is well-settled that the right to counsel is the right to effective assistance of counsel. *See, e.g., McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). The standard for determining deficient assistance of counsel has been stated as the failure to "exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances...." *White v. White,* 602 F.Supp. 173, 175 (W.D.Mo.1984). In other words, counsel "has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d 674 (1984).

There is a strong presumption that counsel's conduct falls within the broad range of professional competence. *Id.* at 689, 104 S.Ct. at 2065. In this case, however, the petitioner has successfully rebutted the presumption of attorney competence. Perhaps this rebuttal can best be explained by contrasting the *Strickland* case with that of petitioner, George C. Gilmore. In *Strickland,* the defense counsel did not seek or present character witnesses during the sentencing phase of a death penalty capital murder case. This strategy was used to prevent the state from cross-examining the defendant and from presenting psychiatric evidence of its own. Although the strategy failed, the Supreme Court held that counsel's decision "was well within the range of professionally reasonable judgment." *Id.* at 699, 104 S.Ct. at 2070.

■ In the case of petitioner George C. Gilmore, the trial attorney failed to object to the blatantly improper and prejudicial remarks made by the prosecutor in closing argument. This failure to object could in no way be interpreted as "trial strategy." It was not the result of an informed and intelligent choice that failed. Counsel's failure to object was so great an error that it moves beyond considering what is prudent and appropriate to what is constitutionally compelled. *United States v. Cronic,* 466 U.S. 648, 665, 104 S.Ct. 2039, 2050, 80 L.Ed.2d 657 (1984).

Indeed, it is the Sixth Amendment right to effective assistance of counsel which compels this Court to exercise the Great Writ of federal habeas corpus to remedy the fundamental unfairness which resulted from counsel's failure to object to the prosecutor's prejudicial closing argument. It is on these grounds that this Court finds that petitioner should receive a new trial in the penalty phase of the proceedings or, in the alternative, be relieved from his unconstitutional sentence of death.

## IV.  *Petitioner was denied trial by jury from fair cross-section of the population*

■ The evidence shows that the trial court judge excused, on his own motion, one of the individuals scheduled as a venireman. The venireman served as a police officer on occasion, and he indicated to the judge that he wanted to bring a gun into the trial. The petitioner now claims that he was unfairly deprived of his right to have a qualified juror available due to the judge's dismissal of juror number 21.

The Missouri Supreme Court dealt extensively with this issue on direct appeal in *State v. Gilmore,* 661 S.W.2d at 523, and found no error. In reviewing the state court's fact-finding, a federal court must afford the state court a presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). *See also Patton v. Yount,* 467 U.S. 1025, 1040, 104 S.Ct. 2885, 2893, 81 L.Ed.2d 847 (1984).

For a reason unclear to this Court, the petitioner seems to be arguing that he had a constitutional right to have juror number

21 on the jury panel.[4] Missouri law is clear that a "trial court has the authority to strike prospective jurors on its own motion." *State v. Marshall,* 571 S.W.2d 768, 772 (Mo.Ct.App.1978) *citing State v. McWilliams,* 370 S.W.2d 336 (Mo.1963). Further, the petitioner has no right to have a particular person on the jury panel. *Id.*

It is evident that the trial court is in a far better position to judge whether or not juror number 21 should have been excused from the jury panel. Therefore, any doubts will be resolved in the trial court's favor. *State v. Smith,* 649 S.W.2d 417, 421–22 (Mo.1983) (en banc). Upon review of the record, this Court concludes that petitioner's constitutional rights remained inviolate as a result of dismissal of juror number 21.

## V. *Petitioner's Death Sentence is Unconstitutional Because the Jury Considered Improper Evidence*

■ During the sentencing phase of the petitioner's trial, the jury was permitted to view the videotaped confession of the petitioner in which he admitted to a dual killing of an elderly couple. The petitioner claims that this evidence was improperly admitted and resulted in a deprivation of the petitioner's constitutional rights under the Eighth and Fourteenth Amendments.

This Court agrees with the legal analysis of the Missouri Supreme Court on this issue. *See Gilmore v. State,* 661 S.W.2d at 523–24. Procedurally, it is necessary to prove the existence of an "aggravating circumstance" before the jury can, after considering all the evidence, recommend the death sentence. *State v. Shaw,* 636 S.W.2d 667, 675 (Mo.1982) (en banc). The Missouri statute in effect at the time of petitioner's conviction allowed the jury to "hear additional evidence in extenuation, mitigation, and aggravation of punishment...." Mo. Rev.Stat. § 565.006 (1977)[5].

To prove the existence of this nonstatutory aggravating circumstance, the petitioner's videotaped confession to the murders of Clarence and Lottie Williams was introduced into evidence. Consideration of this evidence is clearly permissible under § 565.006 because it is relevant to the jury's consideration of an aggravating circumstance which can be considered during the penalty phase of a trial.

The United States Supreme Court has approved of this view in such cases as *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 973 (1978). In *Gregg,* the Court advocated limiting restrictions on evidence heard by the jury during the penalty phase of the trial. The Court thought it "desirable for the jury to have as much information as possible when it makes the sentencing decision," *Gregg,* 428 U.S. at 203, 96 S.Ct. at 2939. Likewise, in *Lockett,* the Court held that " 'possession of the fullest information possible concerning the defendant's life and characteristics' is 'highly relevant—*if not essential*—[to the] selection of an appropriate sentence.' " *Lockett,* 438 U.S. at 603, 98 S.Ct. at 2964, *quoting Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949).

It is clear that a wide range of evidence and information is constitutionally admissible during the penalty phase of a trial, providing that it conforms to the laws of evidence and it is not unjustly prejudicial to the defendant. This Court is convinced that the jury was properly given all the requisite information in making the decision as to punishment. The Court is not persuaded by the petitioner's argument that evidence of other crimes is impermissible in the penalty phase. The rationale for this rule of evidence (fear that defendant will be convicted for the other crimes rather than for guilt in the case currently at bar) is not pertinent to the penalty phase.

---

4. As respondent has suggested, there is no indication that juror number 21 would have been favorable to the petitioner. In fact, evidence indicated that juror number 21 would have favored the prosecution: he was a former police officer, he wanted to carry a gun to the trial, he had information about the case, and he admitted to being "kindly [sic] scared."

5. This section has no continuity with the existing § 565.006. The former statute was repealed by L.1983, p. 922, S.B. No. 276, § 1.

*See State v. Trimble,* 638 S.W.2d 726, 738 (Mo.1982) (en banc), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). The evidence submitted to the jury was properly admitted in the penalty phase.

### VI. *Petitioner's sentence is unconstitutional because the death sentence is cruel and unusual punishment*

The petitioner claims that his death sentence is unconstitutional because the Eighth and Fourteenth Amendments to the United States Constitution prohibit cruel and unusual punishment. This claim appears frivolous in light of the current state of the law, and will not be discussed by this Court in length. For a thorough discussion of the history of capital punishment, see *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

### VII. *Petitioner's death sentence is disproportionate*

The petitioner argues that the State arbitrarily chose to seek the death penalty against him. He cites no evidence to substantiate this claim, nor does he cite case law to support the proposition that this sentence is disproportionate.

The United States Supreme Court held in the case of *Pulley v. Harris,* 465 U.S. 37, 43–44, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984), that the Constitution does not require a state court to compare the death sentence to penalties imposed in similar cases. This law is controlling here. Therefore, the petitioner's claim that his death sentence is disproportionate is without merit.

### VIII. *The Jury was allowed to Consider Improper Evidence in Imposing the Death Penalty*

The petitioner argues that his conviction and death sentence are unconstitutional under the Fifth, Eighth, and Fourteenth Amendments because the jury was allowed to consider the impact of the crime upon its victim and the victim's relatives. The case of *Booth v. Maryland,* — U.S. ——, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) is directly on point. The Supreme Court recently held in *Booth* that information concerning the emotional impact on the victim and his family is "irrelevant to a capital sentencing decision, and that its admission creates a constitutionally unacceptable risk that the jury may impose the death penalty in an arbitrary and capricious manner." *Id.* at ——, 107 S.Ct. at 2533.

The possibility of prejudice against the petitioner in the sentencing phase of the trial compels this Court to find that the jury should not have been allowed to consider this evidence. The analysis of Section III of this Order also applies to this evidence.

### IX. *Conclusion*

The United States Constitution clearly gives all defendants the right to a fair trial by jury. The Petitioner, George C. Gilmore, was not given a fair trial in that (1) the prosecutor's closing argument included prejudicial error; (2) Petitioner was denied effective assistance of counsel; and (3) the jury was allowed to consider improper evidence in imposing the death penalty Because Petitioner's constitutional rights have been violated, this Court is compelled to grant Petitioner's motion for habeas corpus relief.

Accordingly, it is hereby

ORDERED that petitioner shall receive a new trial on the penalty phase of the proceedings or, in the event the State elects not to give Petitioner a new trial on the penalty phase, then he shall be relieved of his unconstitutional sentence of death and will be confined for fifty (50) years without parole.